■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRELL PERKINS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldstein, J.), rendered February 21, 1989, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress a statement he made to the police.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress the statement made by him to the police is granted, and the matter is remitted to the Supreme Court, Kings County, for a new trial if the People be so advised. The facts have been considered and determined to have been established.

The defendant and three others were jointly charged with murder in the second degree and lesser offenses in connection with the January 17, 1988, shooting death of Derek Winston. One of the alleged perpetrators, Christopher Owens, pleaded guilty to criminal possession of a weapon in the third degree and he became the prosecution's chief witness against the defendant in this case. An inculpatory statement the defendant made to the police was the only evidence offered by the prosecution for the purpose of corroborating Owens' accomplice testimony as mandated by CPL 60.22. We agree with the defendant's contention that the trial court committed error in denying that branch of his omnibus motion which was to suppress the statement he made to the police as it was the product of a custodial interrogation without the administration of the *Miranda* warnings. Accordingly, the judgment is reversed and the matter is remitted for a new trial if the People be so advised *(People v Gonzalez,* 80 NY2d 883).

The evidence adduced at the pretrial suppression hearing establishes that the police received an anonymous call at about 8:00 A.M. on January 17, 1988, advising them that two males who may have been involved in the shooting of Derek Winston could be found at an apartment located at 75 Cumberland Walk in Brooklyn. Detective Charles Gisondi, together with three other police officers, went to the apartment and spoke to a woman who identified herself as the mother of the codefendant Catoe. The woman told the police that the two males that they were looking for had gone to the home of her son's girlfriend.

After arriving at this latter location, the police were advised

by another woman that Catoe was present in the apartment and had been there for a couple of hours. Gisondi asked if he could come in and look around. The woman agreed and directed him and Detective Coleman to the bedroom area of the apartment. The two detectives entered a bedroom and Gisondi observed two men sleeping on a bed under a cover. Because he feared that the men might possess a weapon, Gisondi took out his gun. With his colleague directly behind him, Gisondi tapped one of the men and pulled back the covers, thereby awaking both individuals. He then ordered them out of bed at gunpoint and searched the "immediate, grabable area of the two individuals, looking for a possible weapon".

After the search had concluded, Detective Gisondi re-holstered his weapon, advised the men that he was investigating an incident that had occurred during the night, and asked them whether they would accompany him to the precinct to discuss the matter. Gisondi testified that the two men agreed to accompany him to the precinct. Thereafter, the defendant and codefendant were escorted by the four detectives to an unmarked police vehicle. The vehicle contained a locking device which was activated so that "they couldn't get out unless [the police] let them out". The detective could not recall either whether he had handcuffed the defendant or whether the defendant had told the detective at any time: "I am not going with you".

The hearing record further reveals that after arriving at the precinct, the defendant waited for approximately four hours before he was questioned. Sergeant Finn testified that prior to reading the defendant his *Miranda* rights, he asked the defendant if he would be willing to state what had happened. The defendant agreed to do so and related to the detective that he had been with the codefendant, Victor Davis, prior to and during the time that Davis fired the fatal shot that killed the decedent. At this juncture, Finn interrupted the defendant's narrative, advised him of his rights, and asked him to continue. The defendant then provided a more detailed statement regarding his participation in the crime, which was reduced to writing by the officer and signed by the defendant. The defendant sought suppression of the latter statement.

The determination of whether a particular individual is in custody prior to receiving the *Miranda* warnings turns on what a reasonable person innocent of any crime would have thought had he been in the accused's position *(People v Yukl,* 25 NY2d 585, *cert denied* 400 US 851; *People v McIntyre,* 138

AD2d 634). We conclude that the coercive and intimidating atmosphere which necessarily resulted from the defendants being awakened and ordered out of bed at gunpoint would have led a reasonable person innocent of any crime to have concluded that he was in custody and was not free to decline the request by the detectives to accompany them to the precinct. Although Detective Gisondi eventually re-holstered his weapon before making that request, we conclude that this action failed to dispel the coercive atmosphere that already existed, especially in view of the strong police presence in the apartment. Nor is there any reason to conclude pursuant to *People v Yukl (supra)*, that the defendant was no longer in custody once he was at the precinct and the initial questioning commenced, especially in view of the fact that the defendant was locked in the police vehicle and thereafter waited at the precinct for approximately four hours before being questioned.

The mandate of NY Constitution, article I, § 6 that "[n]o person shall * * * be compelled in any criminal case to be a witness against himself" would have little deterrent effect if the police knew that they could, as part of a continuous chain of events, question a suspect in custody without warning provided that they question him or her again after warnings have been given *(People v Bethea,* 67 NY2d 364). Because of the close sequence between the defendant's unwarned initial statement and the second warned statement, and because the defendant was in custody when he made the first unwarned statement, the second statement should have been suppressed by the hearing court. We reverse the judgment of conviction because suppression of the defendant's statement was erroneously denied. As indicated above, the inculpatory statement made by the defendant was the only evidence offered by the prosecution corroborating the testimony of Christopher Owens, an accomplice in the commission of the crime. Since our suppression ruling removes proof of corroboration, the evidence remaining after suppression is not legally sufficient. This presents the question of whether CPL 470.20 calls for dismissal of the indictment or a new trial. In answering the question, we must harmonize two recent Court of Appeals decisions *People v Gonzalez* (80 NY2d 883, *supra)* and *People v Rossi* (80 NY2d 952).

The Court of Appeals, faced with an identical question in *People v Gonzalez (supra)*, remitted the case for a new trial despite the fact that its ruling suppressing defendant's confession, which had been erroneously received in evidence by the

trial court, left legally insufficient evidence remaining to prove the crime charged. The appellant in *Gonzalez,* had specifically requested dismissal rather than a new trial relying on *People v Bouton* (50 NY2d 130, 136) as authority for his request. The Court of Appeals did not specifically discuss this issue in *Gonzalez;* however, its ruling tracks the language and legislative history of CPL 470.20 (1). Mere trial error is reason for ordering a new trial, but not a dismissal of the charge. Only when the People fail to make out a legally sufficient case at trial or offer proof that cannot withstand a weight of the evidence analysis, should dismissal follow *(see,* CPL 470.20 [2]; *People v Bleakley,* 69 NY2d 490, 494).

In the instant case, the People were entitled to rely on the trial court's suppression ruling. In doing so, they presented a legally sufficient case. While the suppression ruling was erroneous, such trial error should result in a new trial, not the ultimate sanction of dismissal *(see, People v Gonzalez, supra).* By contrast, in *People v Rossi (supra),* dismissal was directed because the suppressed evidence was "the only direct link" between defendant and the charge *(see also, People v Woods,* 189 AD2d 838 [decided herewith]). Here, the possibility remains that the People can present other evidence sufficient to corroborate the accomplice's testimony and thereby make out *a prima facie* case. We therefore follow *People v Gonzalez (supra)* and remit for a new trial, if the People be so advised. Rosenblatt, J. P., Miller, Ritter and Pizzuto, JJ., concur.