OPINION OF THE COURT
 

 Wesley, J.
 

 This medical malpractice action focuses on the alleged failure of a surgical anesthesiologist, defendant Gilbert Proper, to
 
 *601
 
 monitor plaintiff Joseph Nucci’s condition following surgery at defendant Rochester General Hospital. At some point before Nucci entered the recovery room, he sustained irreversible brain damage due to oxygen deprivation. The parties dispute the course of events following the surgery leading to this tragic result. Plaintiffs contend that Nucci became hypoxic after developing an airway obstruction following extubation, which went unnoticed for several minutes while Proper and other surgical staff were focused on post-operative procedures and paperwork. Defendants maintain that Nucci’s obstruction was immediately and successfully treated, but not before his heart went into electromechanical disassociation, causing his heart to stop and resulting in oxygen deprivation during resuscitation efforts.
 

 At trial, plaintiffs offered the testimony of anesthesia technician Debra Fader and Tammy Jo Higgins, a 17-year-old high school intern. Both testified that when they entered the operating room (OR) to assist in preparing the room for the next surgical procedure, the usual hustle and bustle of room turnover was already in progress. Higgins testified that she spent about five minutes taking inventory of the anesthesia cart. As she turned to leave, she noticed Nucci’s face was blue. When Higgins returned to the OR two to five minutes later, Nucci was still blue, and OR staff were now engaged in resuscitation measures. Fader testified that she had been working both in and out of the OR for approximately 15 minutes before any indication of an emergency became apparent. At that time, she overheard OR staff begin working on Nucci and testified that when she turned toward the commotion, she noticed the patient was a chalky or dark blue. Proper testified that he monitored Nucci at all times and took immediate emergency measures as soon as Nucci began to have difficulty breathing.
 

 Both sides produced expert witnesses to correlate Nucci’s facial coloration to his loss of oxygen. The experts disagreed as to the possible causes for Nucci’s appearance. Furthermore, because the time notations relevant to the sequence of postoperative events had been altered on the medical charts, neither expert could testify with certainty how long Nucci had been hypoxic.
 

 Plaintiffs also unsuccessfully sought to offer the testimony of Nucci’s cousin, Kathy Bellucco Osborne. During plaintiffs’ offer of proof, Osborne testified that she spoke with Higgins several days after the incident at a family gathering. Osborne noted that Higgins indicated she had been present during Nucci’s
 
 *602
 
 surgery; that when Higgins and Fader had entered the OR, “they saw [the patient] was blue;” that “the machine read nothing” and “nobody was paying any attention;” and that Fader finally spoke up and asked “is this supposed to be this way” and if “something [was] wrong here,” after which the “doctors and nurses turned around” and started reintubating Nucci. Plaintiffs’ counsel sought to introduce this evidence to establish that Nucci’s hypoxia was the result of inattention by Proper and the OR staff.
 

 Following a verdict in favor of defendants, Supreme Court granted plaintiffs’ motion to set aside the verdict and ordered a new trial. The court, relying on our decision in
 
 Letendre v Hartford Acc. & Indem. Co.
 
 (21 NY2d 518), concluded that it had erroneously excluded Osborne’s testimony because both Osborne and Higgins were available for cross-examination and thus the dangers generally presented by hearsay evidence were nonexistent. The Appellate Division reversed and reinstated the verdict. We granted leave to appeal, and now affirm.
 

 Out-of-court statements offered for the truth of the matters they assert are hearsay and “may be received in evidence only if they fall within one of the recognized exceptions to the hearsay rule, and then only if the proponent demonstrates that the evidence is reliable”
 
 (People v Brensic,
 
 70 NY2d 9, 14 [citing
 
 People v Nieves,
 
 67 NY2d 125, 131];
 
 see also, People v Brown,
 
 80 NY2d 729, 734-735 [present sense impressions];
 
 People v Brown,
 
 70 NY2d 513, 518-519 [excited utterances]). In determining reliability, a court must decide “whether the declaration was spoken under circumstances which render [ ] it highly probable that it is truthful”
 
 (Brensic, supra,
 
 70 NY2d, at 14-15;
 
 see also,
 
 Prince, Richardson on Evidence § 8-107, at 504-505 [Farrell 11th ed 1995]).
 

 Plaintiffs contend that Supreme Court correctly viewed
 
 Letendre
 
 as creating an exception to the hearsay rule premised solely on witness availability. We disagree and reject plaintiffs’ invitation to extend the
 
 Letendre
 
 holding to the unsworn oral statements at issue in this case.
 

 Letendre
 
 involved an employer’s attempt to collect on a fidelity bond he had purchased from an insurer against embezzlement by an employee. At trial, the employee denied embezzling the missing funds. The Court held that the employee’s prior inculpatory statements to the insurer’s agent regarding his role in the theft were properly admitted because the classic dangers posed by hearsay testimony did not exist
 
 (Letendre,
 
 
 *603
 

 supra,
 
 21 NY2d, at 524). The Court highlighted several indicia of reliability — the statements were against the declarant’s pecuniary and penal interests; they were in writing and recorded by an agent of the party against whom they were offered; and the declarant was present in court, subject to oath and the safeguard of cross-examination. Contrary to plaintiffs’ view, the availability of the declarant was only one component of the
 
 Letendre
 
 reliability equation.
 

 Reliability is the sum of the circumstances surrounding the making of the statement that render the declarant worthy of belief. Relevant factors include “spontaneity, repetition, the mental state of the declarant, absence of motive to fabricate, * * * unlikelihood of faulty recollection and the degree to which the statement was against the declarant’s * * * interest”
 
 (see, People v James,
 
 93 NY2d 620, 642 [citing
 
 Idaho v Wright,
 
 497 US 805, 821;
 
 Dutton v Evans,
 
 400 US 74, 89]). Courts have also “considered the status or relationship to the declarant of the person to whom the statement was made * * *, whether there was a coercive atmosphere, whether it was made in response to questioning and whether the statements reflect an attempt to shift blame or curry favor”
 
 (James, supra,
 
 93 NY2d, at 642-643 [citing
 
 United States v Matthews,
 
 20 F3d 538, 546;
 
 United States v Barone,
 
 114 F3d 1284, 1302 (1st Cir),
 
 cert denied
 
 522 US 1021;
 
 Earnest v Dorsey,
 
 87 F3d 1123, 1133-1134 (10th Cir),
 
 cert denied
 
 519 US 1016;
 
 United States v York,
 
 933 F2d 1343, 1362-1363 (7th Cir),
 
 cert denied
 
 502 US 916]).
 

 In stark contrast to the out-of-court statements at issue in
 
 Letendre,
 
 there are no indicia of reliability here. The proffered statements were not made in writing or under oath.
 
 [1]
 
 They were made several days after the incident occurred at a gathering of Nucci relatives and their friends and they were reported by Osborne, who, as Nucci’s first cousin, may have had a strong motive to shade her testimony. Some of the statements involved double hearsay, e.g., what Osborne heard Higgins say concerning Fader’s statements. Furthermore, Higgins was a young, inexperienced high school student with no medical training. Indeed, plaintiffs acknowledge that Higgins was not an agent of the hospital, such that any statement she made could properly be considered a declaration against interest.
 

 
 *604
 
 In light of these circumstances, a significant probability exists that the statements may implicate the dangers of the declarant’s faulty memory or perception, insincerity, or ambiguity — traditional testimonial infirmities which the hearsay rule is designed to guard against
 
 (see, People v James, supra,
 
 93 NY2d, at 634 [citing
 
 Williamson v United States,
 
 512 US 594, 598-599];
 
 see also,
 
 Tribe,
 
 Triangulating Hearsay,
 
 87 Harv L Rev 957, 958 [1974]). Furthermore, the statements may have been misunderstood, or incorrectly reported. These infirmities are not cured simply by Higgins’ presence at trial and her availability for cross-examination because Higgins denied making those statements plaintiffs deemed crucial to their case. Thus, we reject plaintiffs’ argument that Osborne’s testimony is admissible under
 
 Letendre.
 

 [2]
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Significantly, we note that the Legislature has decided that impeachment of one’s own witness by a prior inconsistent statement may only be effected if the statement was made in a writing subscribed by the witness or made under oath
 
 (see,
 
 CPLR 4514; CPL 60.35 [1]). We see no compelling reason why a statement bearing fewer indicia of reliability should be admitted for substantive purposes.
 

 [2]
 

 . We recognize that several States have chosen to adopt the so-called “modem” view — permitting the admission of prior, unsworn oral statements where the declarant is available and subject to cross-examination (see, 3A Wigmore, Evidence § 1018, n 3, at 499-508 [2000-2001 Supp]). In light of our requirement of sufficient indicia of reliability for out-of-court statements offered under exceptions to the hearsay rule, however, we retain our adherence to the traditional approach.