■ MARIOLA STANKOWSKI, as Administratrix of the Estate of JANUSZ STANKOWSKI, Deceased, Respondent, v HARRY H. KIM et al., Respondents, and POST & TABACK, INC., Appellant, et al., Defendant. (And Other Third-Party Actions.) [730 NYS2d 288] —Order, Supreme Court, Bronx County (Joseph Giamboi, J.), entered January 31, 2001, which, *inter alia,* denied defendant Post & Taback's motion for summary judgment, to the extent appealed from, as limited by the briefs, reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

On the morning of January 10, 1995, at the New York City Terminal Market in the Hunts Point area of the Bronx, plaintiff's decedent was killed when he was struck by the rear of a truck backing into defendant Post & Taback's loading dock. According to measurements made at the scene, the decedent's head was 36½ feet from the loading platform and his feet were a distance of 42 feet from the platform. At the time of the accident, decedent, an employee of a roofing contractor doing work at the market, was carrying, on his shoulder, a box of assorted breakfast items for his co-workers. Plaintiff claims that after the truck initially struck decedent, he attempted to get up and was struck again after he slipped and fell down on rotten fruit and other debris and that Post & Taback was negligent in allowing a dangerous condition—the accumulation of fruit and other refuse—on the pavement in front of its loading dock and in failing to monitor and control truck and pedestrian traffic.

The IAS court denied Post & Taback's motion for summary judgment, finding admissible evidence of "rotted and flattened organic material in the area of the fall," in addition to the contents of the box the decedent was carrying. The court also found questions of fact as to whether the decedent's body was dragged or moved by the action of the truck and as to Post & Taback's failure properly to regulate and control vehicular and pedestrian traffic in the market as a possible proximal factor. We reverse.

At the outset, it should be noted, there is no admissible evidence supporting plaintiff's theory that after the decedent was

struck by the truck he was unable to regain his balance because rotten fruit and other debris created a slippery condition on the roadway. The witness statement of Anthony Arbetinos, which was part of the police report, states that after he heard somebody yell, "Stop," he "turn[ed his] head around. [A man] was slipping on oranges." This statement, however, is inadmissible hearsay. (*See, Antonik v New York City Hous. Auth.*, 235 AD2d 248, *lv denied* 89 NY2d 813.) Arbetinos testified differently at his deposition: after he initially heard someone yell, "stop," and turned and saw decedent under the wheels of the truck, he observed him "down, trying to crawl." Arbetinos, who was born in Greece and could not read English, denied that he had seen the decedent slip on oranges before he was hit by the truck and did not recall telling a police officer that "the guy was slipping on oranges." And while there is evidence of certain debris on the ground, there is no evidence of decedent slipping on anything.

While, as the dissent points out, hearsay is admissible to defeat summary judgment, this is true only where it is not the only evidence offered (*Murray v North Country Ins. Co.*, 277 AD2d 847, 850; *Guzman v L.M.P. Realty Corp.*, 262 AD2d 99), where the declarant is presumably available to testify in accordance with his or her prior statement (*see, Levbarg v City of New York*, 282 AD2d 239, 241) or where there is a reasonable excuse for failing to submit the evidence in admissible form (*Shapiro v Butler*, 273 AD2d 657, 659-660.) None of these circumstances is present here. Thus, while Arbetinos's statement could be used for impeachment purposes if he testified at trial, it would not be admissible on plaintiff's direct case. (*Nucci v Proper*, 270 AD2d 816, *affd* 95 NY2d 597.)

In any event, Post & Taback did not have a duty to keep the area where decedent was struck free from debris. A property owner has no duty to keep adjacent public areas in a safe condition unless it created the condition or used the area for a special purpose. (*Xerri v Cooper Union for the Advancement of Science & Art*, 255 AD2d 165.) There is no evidence of either in this case. While Post & Taback cleaned the parking area adjacent to the loading platform and extending out 12 to 15 feet,[1] the decedent's body was, as noted, at least 36½ feet away from the loading dock. While the IAS court alluded to the possibility that the body was moved or dragged by the action of

---

1. The Hunts Point Terminal Produce Cooperative Association's rules required each tenant to sweep only five feet out from the loading platform, but Post & Taback's principal stated that he was responsible for sweeping 12 to 15 feet out at the end of each day.

the truck, plaintiff offered no evidence to support this theory, which remains sheer speculation.

The dissent finds a conflict between the investigating officer's assertion that the decedent's body was, at the closest point, $36\frac{1}{2}$ feet from the platform and the testimony of the driver of the truck which struck decedent that he stopped the truck only 4 feet from the platform. The evidence as to the location of the body is uncontroverted and there is no evidence that the body was moved. But even crediting the truck driver's testimony that he stopped the truck immediately after he "had the sense that [it] was going over something" and that he stopped 4 feet from the platform, the decedent's head would still be at least $14\frac{1}{2}$ feet and his feet 20 feet from the platform.[2] Thus, it could not be reasonably inferred from the driver's testimony that the decedent was struck within the area Post & Taback was required to clear.

While, as the dissent notes, citing *Noseworthy v City of New York* (298 NY 76), a relaxed standard of proof applies to this case, plaintiff still must set forth facts from which negligence may be inferred (*see, Barile v Carroll*, 280 AD2d 988; *see also, Lynn v Lynn*, 216 AD2d 194). Such proof is lacking here.

Finally, there is no merit to plaintiff's contention that Post & Taback had a duty to direct traffic or to supervise vehicles using its loading dock. (*See, Pulka v Edelman*, 40 NY2d 781, 782-785; *Fernandez v New York Hilton Joint Venture*, 271 AD2d 338; *Souffrant v Quality Wholesale Veal Ctr.*, 135 AD2d 398.) Concur—Sullivan, P. J., Nardelli and Rubin, JJ.

Mazzarelli and Saxe, JJ., dissent in a memorandum by Saxe, J., as follows: I would affirm the order denying the motion of defendant-appellant Post & Taback, Inc. for summary judgment dismissing the complaint and all cross claims as against it.

On January 10, 1995, at about 9:30 A.M., Janusz Stankowski, a 36-year-old roofer employed by third-party defendant Marangos Construction Corp., was walking in the vicinity of the loading dock abutting stall #254 of the Hunts Points Market, which stall is leased by Post & Taback. Carrying on his shoulder a carton of assorted breakfast items for co-workers, Stankowski was hit by a truck owned by defendant Rainbow Supermarket, Inc. (Rainbow) and driven by its employee defendant Harry Hyungnam Kim (Kim), as it was backing into a parking spot at

---

**2.** This calculation is based on the officer's measurements—which are uncontroverted—as to the location of the decedent's head and feet in relation to the back end of the truck.

Post & Taback's loading dock. According to plaintiff's bill of particulars, Stankowski attempted to get up, but slipped and fell on rotten and slippery fruit and other debris which were located on the pavement, whereupon he was again struck by the truck's wheels, which rolled over his head and chest, killing him.

This action ensued against Rainbow, Kim, Post & Taback and the Hunts Point Terminal Produce Cooperative Association, Inc. (the Association). Plaintiff's claim of liability against Post & Taback was that it had failed to: (1) clean debris at the scene, which contributed to the accident by preventing Stankowski from regaining his balance after the initial impact, and (2) control vehicular and pedestrian traffic in the area of its stall. Post & Taback impleaded Universal Sanitation, claiming it was responsible for the removal of any debris from the area, and the Association impleaded Marangos.

In the present motion Post & Taback takes the position that no evidence exists showing that it violated any duty toward Stankowski, in that (1) the accident occurred in a common area over which it had no control and as to which it had no obligation, and (2) in any event, plaintiff made no showing that Stankowski's death was in any way caused by debris.

The majority agrees, accepting the facts as reported by the police officer who investigated the accident, and rejecting as unsupported the allegation that Stankowski slipped on debris, remarking that there is no evidence of Stankowski slipping on anything, since the statement upon which plaintiff relies regarding Stankowski "slipping" amounts to inadmissible hearsay.

Although I agree with my colleagues that Post & Taback had no legal duty to control the conduct of drivers in the vicinity of its stall (see, Souffrant v Quality Wholesale Veal Ctr., 135 AD2d 398, 400; Fernandez v New York Hilton Joint Venture, 271 AD2d 338), I disagree with their assessment that no issues of fact are presented. In my view, sufficient evidence was presented to create issues of fact as to whether, after being initially struck and knocked down by the truck, the decedent's inability to move enough to avoid being run over by the truck's tires was caused by the presence on the pavement of old discarded produce or other debris that appellant should have cleared away, either pursuant to the cooperative's rules or based upon its standard practice (see, Farrar v Teicholz, 173 AD2d 674, 677).

As to the allegation that Stankowski slipped on debris, there is unrefuted evidence that garbage and debris were present on

the pavement in the vicinity of the accident, in addition to the statement of witness Anthony Arbetinos that at the time of the accident he had observed Stankowski slipping on oranges. That Arbetinos stated otherwise at his deposition four years later provides a basis to challenge at trial the validity of his observations and his credibility, *but does not* resolve as a matter of law the question of what he actually observed, as to which he himself has created an issue of fact. Nor does the hearsay nature of Arbetinos's statement to the investigating police officer prevent its use in opposition to a summary judgment motion (*see, Levbarg v City of New York*, 282 AD2d 239, 241). Although the hearsay statement may not serve as direct evidence at trial, it may be used for purposes of impeachment, so as to permit thorough inquiry into the nature and extent of what Arbetinos observed. Since the decedent in this wrongful death action cannot explain what occurred, we should give plaintiff the fullest possible opportunity to prove at trial the asserted fact that the decedent slipped on debris, particularly in view of Arbetinos's initial statement, as well as the presence of debris in the vicinity.

Furthermore, defendant's suggestion that if the decedent slipped, it must have been on an item from the box of breakfast foods he was carrying, is, at best, an alternative inference to be suggested to the finder of fact.

As to the question of whether the accident occurred in an area over which Post & Taback had no duty to clear debris, while the investigating officer reported a distance of over 36 feet between the loading dock and the site of the accident, the driver of the truck, Harry Hyungnam Kim, stated that the truck was only 4 feet from the loading platform when he stopped it. It is the function of the jury, not of this Court, to determine the accuracy and credibility of these conflicting assertions. While the majority construes Mr. Kim's explanation to require the conclusion that the accident occurred more than 36 feet away, its reasoning ignores Mr. Kim's own estimate of the distance. This sort of assessment and weighing of evidence should be left to the jury.

If the distance attested to by Mr. Kim is accepted, the site of the accident could be found to have been within the area from which Post & Taback has an obligation to clear accumulations of rubbish, since the rules of the Association provide that loading dock tenants must clear rubbish from the adjoining roadway for a distance of five feet out from the platform, and an officer of Post & Taback asserted its responsibility for clearing the area within 12 to 15 feet of the loading dock.

Finally, the question of whether Post & Taback had notice of the hazardous condition cannot be determined as a matter of law. However, the testimony that the problem of debris on the roadway was recurrent and regularly left unaddressed is sufficient to permit the inference that it had notice (*see*, *O'Connor-Miele v Barhite & Holzinger*, 234 AD2d 106). Indeed, an issue of fact exists as to whether appellant created the alleged hazard, raised by evidence that it dropped damaged produce off its loading dock which it would sweep at the end of the day into the common area. These issues turn largely on witness credibility and are inappropriate for summary judgment treatment.

Plaintiff's difficulty in demonstrating exactly how the accident occurred is a direct result of decedent having been killed in that accident. Given plaintiff's showing of facts from which negligence may be inferred, the *Noseworthy* doctrine requires that a relaxed standard of proof be applied (*see*, *Noseworthy v City of New York*, 298 NY 76; *Pierson v Dayton*, 168 AD2d 173, 175). In view of that standard, this Court should be particularly careful to avoid pre-judging the evidence available to plaintiff.

For the foregoing reasons, I would affirm the denial of summary judgment to Post & Taback.