[850 NYS2d 151]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE MINGO, Appellant.

Second Department, January 8, 2008

APPEARANCES OF COUNSEL

*Steven Banks*, New York City (*Susan Epstein* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove* and *Anthea H. Bruffee* of counsel), for respondent.

### OPINION OF THE COURT

RITTER, J.

The issue to be decided on this appeal is whether documents generated by the District Attorney's office in prosecuting the defendant on the underlying indictment constituted "reliable hearsay" within the meaning of the Sex Offender Registration Act (Correction Law art 6-C [hereinafter SORA]) and provided clear and convincing evidence that the defendant was armed with a dangerous instrument during the commission of his sex offense. We find that they did and affirm the defendant's designation as a level two sex offender.

In 1988, the defendant was indicted for rape in the first degree, sexual abuse in the first degree, sodomy in the first degree, assault in the second and third degrees, and criminal possession of a weapon in the fourth degree. According to documents generated by the District Attorney's office, including those at issue on this appeal, the facts giving rise to the indictment are that the victim was walking down the street when the defendant jumped out of an abandoned van, dropped a beer bottle, and asked her, "Do you want to have a good time?" The defendant then forced the victim into the van where he struck her about the head and face, bit and choked her, compelled her to perform oral sex, and placed his penis in her vagina. During the attack, the defendant brandished a chrome/metal strip and threatened to strike the victim with it if she did not continue. The victim was able to escape and promptly flagged down a passing police officer, who arrested the defendant at the scene. Evidence recovered by the police at the scene included a chrome/metal strip.

In 1990, the defendant pleaded guilty to the top count of rape in the first degree (*see* Penal Law § 130.35 [1]) in satisfaction of all charges contained in the indictment in exchange for a bargained-for sentence of 2 to 6 years' imprisonment. The

defendant's initial sex offender status designation under SORA is not clear from the record. However, in 2006, acting upon the stipulation of settlement agreed to in *Doe v Pataki* (3 F Supp 2d 456 [1998]), the defendant was granted a redetermination of his status. Thus, the SORA determination being challenged on this appeal was made approximately 18 years after the underlying crime was committed, and 16 years after the defendant's guilty plea. As a result of the redetermination hearing, the defendant was assessed a total of 85 points on the risk assessment instrument (hereinafter the RAI), making him a presumptive risk level two sex offender. This total included the assessment of 30 points for being armed with a dangerous instrument during the commission of his sex offense. At the SORA hearing, the People proffered the underlying indictment and various documents taken from the District Attorney's file, including, inter alia, an "Early Case Assessment Bureau Data Sheet," a "Grand Jury Synopsis Sheet," and a "Data Analysis Form." The documents described the factual scenario noted above. Defense counsel did not object to receipt of the documents, but argued that they were not sufficient to provide clear and convincing evidence that the defendant was armed with a dangerous instrument during the commission of his sex offense. Specifically, counsel asserted that the "Grand Jury Synopsis Sheet" and "Data Analysis Form," both of which described the defendant's use of the chrome/metal strip, did not constitute "reliable hearsay" within the meaning of SORA. Concerning the "Grand Jury Synopsis Sheet," counsel argued: "The document is unsigned, unsworn, uncorroborated; I don't know where it came from, unreliable hearsay. It is not supported by any other reliable documentation, other documents that would have been found to be reliable by the courts." Finally, defense counsel argued, the defendant's guilty plea to rape in the first degree pursuant to Penal Law § 130.35 (1) established only forcible compulsion, not that he was armed with a dangerous instrument. The Supreme Court, finding the documents constituted reliable hearsay within the meaning of SORA, and provided clear and convincing evidence that the defendant was armed with a dangerous instrument during the commission of his sex offense, adjudicated him to be a level two sex offender. We affirm.

The People bear the burden of proving the facts supporting a SORA determination by "clear and convincing evidence" (Correction Law § 168-n [3]; *see People v Dong V. Dao*, 9 AD3d 401 [2004]; *People v Collazo*, 7 AD3d 595 [2004]). Clear and convinc-

ing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened (*see Ausch v St. Paul Fire & Mar. Ins. Co.*, 125 AD2d 43, 45 [1987]; *see also Colorado v New Mexico*, 467 US 310 [1984]; *Doe v Pataki*, 3 F Supp 2d 456 [1998]). The range of materials that may be considered by a court in a SORA proceeding in determining whether this standard has been met is broad. By statute, the court "shall review any victim's statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations" (Correction Law § 168-n [3]; *see People v Hegazy*, 25 AD3d 675 [2006]). Concerning "materials submitted by the board," the SORA Guidelines provide:

> "Completing the risk assessment instrument will often require the Board or a court to review the case file to determine what occurred. Points should not be assessed for a factor—e.g., the use of a dangerous instrument—unless there is clear and convincing evidence of the existence of that factor. This evidence can be derived from the sex offender's admissions; the victim's statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or from any other reliable source" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 5 [2006]).

Thus, the statutory language and the SORA Guidelines permit the admission and consideration of hearsay well beyond that generally admissible into evidence (*see generally Nucci v Proper*, 95 NY2d 597 [2001]). Indeed, in practice, the materials submitted by the Board of Examiners of Sex Offenders to the court generally consist of the RAI and the accompanying case summary, which is often replete with hearsay culled from a variety of secondary sources, such as arrest and probation reports, and the courts have affirmed SORA determinations based on no more, or little more, than the facts set forth in such materials (*see e.g. People v Thompson*, 31 AD3d 409 [2006]; *People v O'Neal*, 26 AD3d 365 [2006]; *People v White*, 25 AD3d 677 [2006]; *People v Overman*, 7 AD3d 596 [2004]; *People v Burgess*, 6 AD3d 686 [2004]; *People v Oquendo*, 1 AD3d 421 [2003]). This is consistent with the nature of a SORA proceeding itself, which,

although arising from a criminal conviction, is "predominantly regulatory" (*People v Stevens*, 91 NY2d 270, 275 [1998]). Thus,

> "risk level classification hearings fall 'somewhere between a criminal proceeding in which a defendant is entitled to a full panoply of rights . . . and a simple administrative proceeding, in which participants have traditionally been afforded less process. Certainly, the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial' " (*People v Brooks*, 308 AD2d 99, 105 [2003], quoting *Doe v Pataki*, 3 F Supp 2d at 470).

Here, the documents proffered by the People fell within the penumbra of the type of materials identified by the statute and SORA Guidelines as permissible sources of reliable hearsay, and provided clear and convincing evidence that the defendant was armed with a dangerous instrument during the commission of his sex offense. In addition to the documents reciting facts that would have been known only to the victim, the seizure by the police of the chrome/metal strip—an object not obviously a weapon on its face—is explained only by its use as such during the underlying sex offense. We disagree with our dissenting colleague that any ambiguities and/or inconsistencies in and between the documents impeached their fundamental character as an accurate and reliable recitation of the relevant facts. Nor do we find such impeachment in the fact that the documents were unsigned, unsworn, and uncorroborated. The documents, by their nature, are not ones that would be signed or sworn, and the defendant should not benefit from the lack of a more developed record of the criminal proceeding when the proceeding was terminated by acceptance of his guilty plea. In addition, given the relaxed evidentiary standard and due process concerns in a SORA proceeding, it is appropriate to consider the age of the underlying criminal conviction and its presumptive effect on the availability of documents, transcripts, and other evidence from the criminal proceeding (e.g., the grand jury minutes), including the availability of testimony from the persons who generated the documents, etc., or who were otherwise involved. Finally, as noted by our dissenting colleague, "the fact that an offender was arrested or indicted for an offense is not, by itself, evidence that the offense occurred" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 5 [2006]). Here, however, the defendant's plea to the top count of the

indictment, which included an admission to the use of forcible compulsion, enhances the reliability of a finding that he was armed with a chrome/metal strip during the commission of his sex offense. This admission, coupled with the other evidence received, is a perfect fit with the language of the SORA Guidelines. In sum, the defendant's adjudication as a level two sex offender is affirmed.

SPOLZINO, J.P. (dissenting). I do not agree that the range of materials that may be considered by a SORA court is broad enough to encompass the documents upon which the SORA determination at issue here depends. Because I believe, moreover, that the defendant adequately preserved for appellate review his objections to the admissibility and sufficiency of that evidence, I would vacate the determination and remit the matter for a new hearing. I, therefore, dissent, respectfully.

As the majority notes, the classification of the defendant as a level two sex offender turns on whether he was properly assessed 30 points for the use of a dangerous instrument in the commission of the underlying offense. The evidence offered by the People at the SORA hearing consisted of the indictment and five other documents: the risk assessment instrument (hereinafter the RAI), without an accompanying case summary; the Kings County District Attorney's "Early Case Assessment Bureau Data Sheet"; a "Grand Jury Synopsis Sheet"; a "Data Analysis Form"; and the defendant's rap sheet.

The only evidence of the use of a dangerous instrument consisted of references in three of these documents to a broken bottle and a piece of metal, or "chrome strip." The "Grand Jury Synopsis Sheet" recites that the defendant threatened the victim with a broken bottle and a piece of metal. The "Data Analysis Form" reflects that the defendant had dropped the bottle before pulling the victim into a van, where he threatened her with a chrome strip. The "Early Case Assessment Bureau Data Sheet" recites that a chrome strip was recovered, but neither specifies where the chrome strip was recovered nor includes the use of the chrome strip in the description of the incident that it contains.

Preliminarily, the majority correctly rejects the People's argument that the defendant's classification here may be sustained solely by reason of the fact that the defendant was charged in the indictment with having committed the crime of criminal possession of a weapon in the fourth degree by knowingly possessing a dangerous instrument. As the SORA Guidelines

provide (*see* Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 5 [2006]), an indictment is not, alone, sufficient to prove a fact necessary to a defendant's classification. An indictment establishes only that there was reasonable cause to believe that the defendant committed the crime (*see People v Swamp*, 84 NY2d 725 [1995]; *People v Calbud, Inc.*, 49 NY2d 389 [1980]). It is not, in itself, evidence that the defendant committed the acts constituting the crime for which he was indicted (*see People v Moran*, 84 AD2d 753 [1981]; *People v Sharp*, 71 AD2d 1034 [1979]; *People v Crossman*, 69 AD2d 887 [1979]).

The People's argument that the SORA determination at issue here may be sustained, without addressing the evidentiary issues, because the defendant failed to controvert the relevant facts, is also, in my view, without merit. The People bear the "burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]; *see People v Dong V. Dao*, 9 AD3d 401 [2004]; *People v Collazo*, 7 AD3d 595 [2004]). Where the relevant facts are set forth in admissible documents and those facts are uncontroverted, the factual assertions set forth in these documents are sufficient to satisfy that standard (*see People v Thompson*, 31 AD3d 409 [2006]; *People v Grimmett*, 29 AD3d 766 [2006]; *People v Forney*, 28 AD3d 446, 447 [2006]; *People v Hines*, 24 AD3d 524 [2005]; *People v Smith*, 5 AD3d 752 [2004]). In each of these cases, however, the defendant failed to controvert actual documentary evidence that had been introduced by the People to establish their case (*see People v Penson*, 38 AD3d 866, 867 [2007]; *People v Moore*, 16 AD3d 190 [2005]; *People v Carswell*, 8 AD3d 1073 [2004]; *People v Dorato*, 291 AD2d 580, 581 [2002]). Where, by contrast, there is no admissible evidence to support the People's contentions, the People's burden has not been met (*see People v Cruz*, 28 AD3d 819, 820 [2006]; *People v Brown*, 25 AD3d 924 [2006]; *People v Hill*, 17 AD3d 715, 716 [2005]) and the determination cannot stand, without regard to the defendant's failure to introduce evidence to the contrary.

The evidentiary issues are thus critical to this determination. They are also, in my view, squarely presented by this record. While it is possible to read certain statements made by defense counsel as expressing a waiver of the defendant's evidentiary objections, a review of the colloquy as a whole establishes, as I see it, that defense counsel both objected to the introduction of the documents and argued that they did not constitute clear

and convincing evidence of the defendant's use of a dangerous instrument.

The relevant portion of the colloquy begins with an inquiry by the court as to the defendant's position with respect to the admissibility of the documents. Although defense counsel initially responded that she was not making any objection, she corrected that statement immediately, asserting that "[s]ome of the documents . . . are not clear and convincing and reliable hearsay." When asked by the court to specify the nature of her objection, defense counsel responded that she was challenging the synopsis sheet and data analysis form "as not being reliable hearsay." She subsequently reiterated that objection and, later in the colloquy, explicitly made the arguments that are advanced on this appeal.

Viewing this colloquy as a whole, defense counsel repeatedly and consistently asserted her view that the documents upon which the People relied constituted neither "reliable hearsay" nor clear and convincing evidence that the defendant had used a dangerous instrument. In my view, defense counsel thus brought the matter to the attention of the court in a manner sufficient for its adjudication, which is all that is required in order to preserve the argument for appellate review (*see* CPL 470.05; *People v Cobos*, 57 NY2d 798, 800 [1982]; *People v Jackson*, 149 AD2d 532, 533 [1989]).

Turning to the merits, the defendant correctly argues that each of the documents in issue here is hearsay—an out-of-court statement offered in court for the truth of its content (*see People v Buie*, 86 NY2d 501, 505 [1995]; *People v Settles*, 46 NY2d 154, 166 [1978]; *People v Caviness*, 38 NY2d 227, 230 [1975]; Prince, Richardson on Evidence § 8-101 [Farrell 11th ed])—and thus inadmissible unless falling within an exception to the hearsay rule (*see People v Brensic*, 70 NY2d 9, 14 [1987]) or admissible on some other basis. The People argue, and the majority agrees, that SORA provides just such a basis by expressly permitting the court to "consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations" (Correction Law § 168-n [3]). In my view, however, on the record presented here, the documents offered by the People do not satisfy even this relaxed evidentiary standard.

New York appellate courts have sustained the admissibility at SORA hearings of various forms of documentary evidence as "reliable hearsay." We have concluded, for example, that grand jury minutes and the SORA case summary and a trial judge's

notes are admissible on this basis (*see People v Davis*, 26 AD3d 364 [2006]; *People v Myers*, 306 AD2d 334 [2003]). Our colleagues in the other appellate departments have reached similar results (*see e.g. People v Warren*, 42 AD3d 593 [2007], *lv denied* 9 NY3d 810 [2007] [risk assessment inventory, SORA case summary, presentence report]; *People v Dominie*, 42 AD3d 589 [2007] [grand jury testimony, sworn statement by victim, transcript of defendant's statements at pleas or sentencing and presentence report]; *People v Ramos*, 39 AD3d 1020 [2007] [victim's statement and defendant's admission]; *People v Kaminski*, 38 AD3d 1127 [2007] [grand jury minutes, victim's sworn statement to police, sentencing minutes, defendant's criminal history]). However, New York courts have never addressed the admissibility of the sort of documents generated by a District Attorney's office prior to the commencement of the SORA process that are in issue here. In my view, the documents that have been found to be admissible differ in several critical respects from the documents that are in issue here.

The case summary and presentence report are prepared in satisfaction of a statutory obligation that prescribes their form and content (*see* Correction Law § 168-n [6]; CPL 390.20, 390.30). The documents at issue here, although apparently emanating from the District Attorney's office, are not, on their face, subject to the same requirements. Similarly, the grand jury minutes and witness statements that have been found to constitute "reliable hearsay" are made under oath or are attributable to a documented source. By contrast, the documents at issue here are unsworn, unsigned, and unattributed.

While it is true that statements in a case summary or probation report frequently constitute "double hearsay" and are nevertheless admissible (*see People v Hines*, 24 AD3d 524 [2005]), such documents are at least the product of an identified author acting within a recognized process designed to produce a reasonably accurate report for judicial use. Here, other than such inferences as may be drawn from the documents themselves, there is no factual basis in the record with respect to the source of the documents or the process by which they were prepared, and no attempt was made to lay a foundation demonstrating that these documents are as trustworthy as the documents that have been recognized to be "reliable hearsay." In my view, therefore, the admissibility of the documents in issue here cannot be established by reference to prior judicial authority.

SORA does not define "reliable hearsay." Nevertheless, the term was not unknown to New York law prior to SORA. "Reli-

able hearsay" is used as a measure of the probable cause necessary to either arrest a criminal suspect without a warrant (*see People v Gaillard*, 256 AD2d 62, 63 [1998]) or detain the respondent in a juvenile delinquency proceeding pending hearing (*see* Family Ct Act § 739). In addition, in federal court, there is "a long history of using reliable hearsay for sentencing" (*United States v Terry*, 916 F2d 157, 160-161 [1990]; *see United States v Zlatogur*, 271 F3d 1025, 1031 [2001], *cert denied* 535 US 946 [2002]), as well as in determining forfeiture matters (*see United States v Ivanchukov*, 405 F Supp 2d 708 [2005]; *United States v Gaskin*, 2002 WL 459005, 2002 US Dist LEXIS 28022 [WD NY 2002], *affd* 364 F3d 438 [2004], *cert denied* 544 US 990 [2005]) and parole revocation hearings (*see Crawford v Jackson*, 323 F3d 123 [2003], *cert denied* 540 US 856 [2003]; *see also Singletary v Reilly*, 452 F3d 868 [2006]; *United States v Young*, 202 F3d 276 [1999], *cert denied* 528 US 1055 [1999]).*

In each of these contexts, courts have understood the admissibility of "reliable hearsay" to permit hearsay evidence only in the presence of factors, or indicia of reliability, that provide a basis for finding it to be trustworthy (*see People v Ketcham*, 93 NY2d 416, 421 [1999]; *People v Chase*, 85 NY2d 493, 501 [1995]; *People v Parris*, 83 NY2d 342, 346 [1994]; *People ex rel. Guggenheim v Mucci*, 32 NY2d 307, 312 [1973]; *United States v Wallace*, 408 F3d 1046, 1048 [2005], *cert denied* 546 US 1069 [2005]; *United States v Espinoza*, 338 F3d 1140, 1152 [2003], *cert denied* 541 US 950 [2004]; *United States v Anderton*, 136 F3d 747, 751 [1998]; *United States v Reese*, 33 F3d 166 [1994], *cert denied* 513 US 1092 [1995]; *United States v Wise*, 976 F2d 393, 402 [1992], *cert denied* 507 US 989 [1993]; *United States v Brach*, 942 F2d 141, 144 [1991]). "Reliability is the sum of the circumstances surrounding the making of the statement that render the declarant worthy of belief" (*Nucci v Proper*, 95 NY2d 597, 603 [2001]).

Viewed in this light, there are several reasons why the documents in issue here fail to qualify as "reliable hearsay." The authors of the documents are not identified and no attempt is made to specify the source of the information that is

---

* The use of reliable hearsay in these contexts is not affected by the limitations recently imposed in *United States v Booker* (543 US 220 [2005]) and *Crawford v Washington* (541 US 36 [2004]) on the manner in which sentencing determinations are made (*see United States v Baker*, 432 F3d 1189 [11th Cir 2005], *cert denied* 547 US 1085 [2006]; *United States v Kelley*, 446 F3d 688, 690-692 [7th Cir 2006]; *United States v Martinez*, 413 F3d 239 [2d Cir 2005]).

set forth. The documents are also internally inconsistent. The "Grand Jury Synopsis Sheet" recites that the defendant threatened the victim with both a broken bottle and a piece of metal. According to the "Data Analysis Form," the defendant threatened the victim only with the chrome strip, having dropped the bottle before pulling the victim into a van. The "Early Case Assessment Bureau Data Sheet" says nothing about the use of either the bottle or the chrome strip, reciting only that the chrome strip was recovered from the defendant. Aside from the fact that they each mention a chrome strip, therefore, there is nothing in the documents themselves that establishes their internal consistency or otherwise evidences their reliability.

There is also no extrinsic evidence to provide the necessary indicia of reliability. No testimony was offered as to how these documents were created. Although it is understandable that the People would be unable to produce a witness in 2006 to testify to the creation of documents in 1990, there was not even an attempt here to introduce evidence as to the purpose for which such documents are used in the District Attorney's office, the policies that govern their creation, or the manner in which they are normally generated. Such evidence, had it been presented, would, in my view, have presented the necessary indicia of reliability. In the absence of such evidence, however, there is nothing in this record from which we can reach such a conclusion.

As I see it, therefore, the documents in issue are not admissible even under the evidentiary provisions of SORA. As such, they should not have been considered by the Supreme Court in reaching its SORA determination. Since there is no other evidence in the record to support the conclusion that the defendant used a dangerous instrument in the commission of the underlying crime, and the points assessed for the use of a dangerous instrument were critical to the Supreme Court's determination that he is a level two sex offender under SORA, that determination must, in my view, be set aside.

Nevertheless, I do not believe that the defendant is entitled to the reduction to level one status that he seeks. Because the People were entitled to rely on the hearing court's ruling and, presumably, might have been able to introduce additional, admissible evidence to establish their case had the hearing court excluded the evidence, the matter should be remitted for a new

hearing (*see People v Wolters*, 41 AD3d 518 [2007]; *Matter of Cheikh F.*, 265 AD2d 326 [1999]; *People v Perkins*, 189 AD2d 830, 833 [1993]).

Lifson and Angiolillo, JJ., concur with Ritter, J.; Spolzino, J.P., dissents and votes to reverse the order and remit the matter for a new hearing to redetermine the defendant's sex offender risk level in a separate opinion.

Ordered that the order is affirmed, without costs or disbursements.